## FRIEDMAN *v.* ADAMS.

COMPROMISE AND SETTLEMENT—EFFECT.

> Defendant by written order authorized plaintiff to retain from moneys due him a certain amount as a contribution towards the payment by plaintiff of a certain claim against a railroad upon which both parties had liens. Subsequently plaintiff entered into an agreement with others in interest providing that plaintiff should be fully protected against the claim, and that defendant should be paid in full, and later, before any part of the claim had been paid, consented to the payment to defendant of the sum due him and the taking of his receipt in full. *Held*, that plaintiff had no cause of action against defendant on the written order, whatever claim he may have had originally being lost by the settlement and receipt.

Error to Wayne; Donovan, J. Submitted June 7, 1907. (Docket No. 23.) Decided October 4, 1907.

Assumpsit by William Friedman against John T. Adams for an amount due upon a written order. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*Bernard B. Selling,* for appellant.

*Wilkinson, Post & Oxtoby,* for appellee.

BLAIR, J. Plaintiff, as assignee of William B. Strang, Jr., brought suit against defendant for a sum alleged to be due upon a written order. The declaration contained a special count, to which were added the common counts. The special count set forth the cause of action, as follows:

"For that, whereas, the said defendant and the said William B. Strang, Jr., hereinafter called plaintiff's assignor, were, in the year of 1899, jointly engaged in the building of the Detroit & Lima Northern Railroad, and in the course of said enterprise it became necessary for the plaintiff's said assignor and said defendant to pay various indebtedness which the plaintiff's said assignor and the said defendant assumed and were jointly liable for, among which was an indebtedness of $12,500 which the plaintiff's said assignor paid at the request of said defendant, said defendant agreeing to pay his share of said money and giving to said plaintiff's assignor an instrument in writing reading as follows:

"'TOLEDO, OHIO, Oct. 5, '99.
"'W. B. STRANG, Jr.:

"'Whereas you are giving the Minnesota Loan & Trust Company and Chas. N. Nelson (or E. A. Merrill for them) an order on the Columbus Northwestern Ry. Reorganization Committee for $12,500 in settlement of the Haskell claim, to be paid out of the moneys due you, this authorizes you to charge and retain from amounts due me as a contribution to said $12,500 the sum of $2,500.'

"'J. T. ADAMS.'

"Said plaintiff's assignor paid said $2,500, relying upon the promises of the said defendant to make good or to pay to said plaintiff's assignor the said sum of $2,500 mentioned in the foregoing instrument.

"It then became and was the duty of the said defendant

to repay to the said plaintiff's assignor the said sum of $2,500, with interest, but the said $2,500, with interest, has never been paid or made good to the plaintiff or his said assignor."

The Merrill claim referred to in the order was based upon a written instrument signed by C. N. Haskell containing, among other things, the following:

"NEW YORK, N. Y., November 21, 1898.

"On the 21st day of May, 1899, for value received, I promise to pay to the order of Charles N. Nelson and the Minnesota Loan & Trust Company of Minneapolis, at the office of the Minnesota Loan & Trust Company in Minneapolis, in the State of Minnesota, the sum of twenty-five thousand dollars ($25,000) with interest from the date thereof at five per cent. (5%) per annum, having deposited as security therefor the certificate of William B. Strang, Jr., as contractor, for the sum of forty-five thousand dollars ($45,000) purporting to be secured as a first lien upon the Detroit & Columbus extension of the Detroit & Lima Northern Railway Company, which certificate bears date the 16th day of August, 1898."

Prior to September 6, 1898, Strang had been engaged, as manager of a finance company, in constructing the Detroit & Lima Northern Railroad and a branch or extension from Peoria to St. Mary's, Ohio. Strang's compensation was the cost of construction and 10 per cent. additional.

In the course of construction, Strang issued lien certificates to persons furnishing money to build the road, payable when he collected from the company. September 6, 1898, the road went into the hands of a receiver, and thereupon Strang filed a lien against the road for about $700,000, covering all of the Strang lien certificates, the money which he had put into the road individually, and all other claims which he had against the road. Soon after the appointment of the receiver, plans were instituted for reorganization, and two separate committees were appointed for that purpose, one for the Detroit & Lima Northern, the other for the St. Mary's Branch, referred to as the Columbus Northwestern Railway.

Charles N. Haskell was the promoter of the Detroit & Lima Northern Railroad, and was president of the same. John T. Adams, the defendant in this suit, was a subcontractor and sublienor under William B. Strang, plaintiff's assignor. Charles N. Haskell was the owner of one lien certificate to the amount of $10,000, which had been assigned to him. All of the liens not represented by Mr. Strang were to be transferred to the main line, which would leave the St. Mary's division free from all liens except those represented by Strang. In order to sell the St. Mary's division free and clear from the rest of the road except the Strang liens, it was necessary to cancel certain bonds and certain lien certificates or put them into the hands of somebody who had authority to do so.

On September 7, 1899, William B. Strang placed in the hands of the Columbus Northwestern Reorganization Committee his lien, upon certain stipulations and conditions, the principal ones being the recognition of certain claims of Strang as entitled to priority, and payable in full. Priority was granted to these claims of Mr. Strang by various resolutions of the reorganization committee.

The holders of the Merrill claim refused to agree to the plans of reorganization unless Strang would guarantee them that they would be paid out of the first money coming to him. Strang declined to do this unless Adams and Mr. Harmon would give him orders like the one declared upon. Haskell procured such orders, the one from Harmon being for $4,500, and thereupon Strang filed with the committee an order to pay to the holders of the claim "out of such moneys to which I may be entitled by the terms of the reorganization agreement and the plan accompanying the same, bearing date September 7th, 1899," $12,500, with interest at 5 per cent. The order, which was dated October 20, 1899, and was accepted by the committee October 21, 1899, provided that—

" At the time of paying the said sum of $12,500, and interest, in compliance with the provisions hereof, you are to receive from the said Minnesota Loan & Trust Com-

pany, and said Nelson, or their assigns, certificate of deposit, which shall be issued by the Hamilton Trust Company to them upon the deposit of my certificate of $45,000 and a certain note of Charles N. Haskell to them, bearing date November 21st, 1898, to secure the payment of $25,000 and interest, at the rate of five per cent. per annum.

"The said trust company and said Nelson shall be under no obligation to deliver the said securities, unless the aforesaid payment is made to them within one year from the date hereof.

"Dated New York, October 20th, 1899."

On September 11, 1900, the Columbus Northwestern Railway having been advertised to be sold at public sale on September 21, 1900, Strang made a proposition to the reorganization committee containing, among other things, the following:

"As no proposition has been suggested in reference to the purchase of the Columbus Northwestern Railway, the sale of which is set for September 21st, 1900, which will protect the creditors of the committee under private agreement, I herewith submit for your acceptance a proposition under which I may meet the obligations of the committee and at the same time save myself and creditors as well as the certificate holders from further great loss. I, or such person or corporation as I may designate, will bid in the railway property at the coming sale. Regardless of the price I may have to bid at said sale to purchase the property, I will settle the following claims, etc., for the committee and this shall be accepted by them in payment for said property, to wit: * * *

"It is distinctly understood that my bid at the public sale for the purchase of this property shall in no way affect the payments that I have to make for or to the committee, my object being to free and discharge the committee from liability if I undertake to become the purchaser or provide for a purchaser of the property and I am to have full power to use for this purpose all claims and securities deposited with the committee or under their control and with further power to compromise, contest, repudiate or adjust any apparent charge or liability against the committee or property. The committee will by proper orders or assignments invest me with the legal

control of all of said claims and securities for the above purchase.

"Having acquired title to the property, I will place same in the hands of a railway corporation and they shall upon account of said property issue the following stocks and bonds.    *    *    *

" The contract between the committee and the depositors with the Hamilton Trust Company contemplated the reorganization of the Columbus & Northwestern Railroad Company under plan 'A' or plan ' B,' set forth as a part of said contract.    My proposition cannot be carried out under plan 'A' but is a substantial execution of plan ' B,' except that the certificate holders and other interests under the Strang lien and judgment, after the payment of the cash requirements, will receive 63% in preferred stock. of the face value thereof, instead of 100% of perferred and common stock of the principal and interest thereof, as set forth in plan ' B.'    This being a departure from the contract of the committee with its depositors, and the assent of 66% in writing of the certificate holders and beneficiary interests, other than cash, being required, I request that the committee shall forthwith obtain the necessary consents in writing so that there may be no delay.

" This proposition and the benefits to be derived therefrom shall extend only to those certificate holders who shall assent in writing on or before the 21st day of September, 1900.

(Sgd.)    " W. B. STRANG, Jr.
" O. K., C. N. HASKELL."

This proposition was accepted by the reorganization committee.    The property was bid in by Strang at the sale under an agreement with Haskell that the property was to be bid in for the joint interest of Strang and Haskell and defining their interests in the property.    The agreement contained a provision that:

" It is also understood as a part of this agreement that the payment to the Minnesota Loan & Trust Company of $12,500 is to be assumed and paid by said Haskell."

At the time of bidding in the property, Strang had an understanding with the Toledo & Ohio Central Railway Company that the property should be sold to it.

On November 1, 1900, Strang made a written proposition

to the Toledo & Ohio Central Railway Company to sell the property to it, which proposition was accepted by the company on the same day. On December 21, 1900, Strang and Haskell entered into a new agreement in writing, reciting the joint interest of the parties, the agreement to sell to the Toledo & Ohio Central Railway Company, and containing provisions as to the interests of the parties, which were more unfavorable to Strang than those in the September agreement. Strang fully understood this agreement and its effect, but testified that Haskell and Mr. Lewis, who was attorney for the Toledo & Ohio Central Railway Company and Haskell as well as for Strang, took advantage of his financial straits and practically compelled him to sign this agreement or lose everything. This agreement, after providing that a portion of the proceeds of the sale to the railway company should be allowed and delivered to Strang, required that the remainder should constitute a fund for the payment of the obligations assumed, and, among others:

"And out of said funds is also to be paid such an amount as may be due to said John T. Adams, if anything, out of the item of $28,961.10 referred to herein as a right of way claim.

"7. It is further understood, as to the claim of E. A. Merrill for twelve thousand five hundred dollars ($12,500), which has been guaranteed by said Strang, that said Strang is to be fully protected on account thereof out of the above-mentioned remaining securities.

"8. All of the bonds, securities, subsidies and other property remaining after compliance with the terms and conditions herein set forth, is to become and be the sole property of said Haskell and those he represents, not mentioned herein.

"10. It is further mutually agreed and understood that all claims to be paid out of said remaining fund shall be in the hands of said Haskell for compromise, settlement or litigation, as he may deem proper, but all settlements are to be to the approval of said Strang, and that said Strang will co-operate therein to the best of his ability in aiding such compromise, settlement or litigation."

The remaining securities referred to in the agreement were left by the parties in the hands of their attorney, Mr. Lewis, to pay the various claims as adjusted. On January 12, 1901, Mr. Lewis paid to the defendant Adams the sum of $6,000 and took from him the following receipt:

"I acknowledge receipt from Doyle & Lewis of the sum of six thousand dollars ($6,000), the same being in full payment, satisfaction and discharge of any and all claims heretofore held by me or by the firm of Vallery & Adams against the Detroit & Lima Northern Railway Company, or the Columbus Northwestern Railway Company, or either of them, and especially covering any interest which I may have had in the so-called Adams right of way claim referred to in the decree of December 16, 1899.

"This receipt, however, is not intended to do other than release the railroads and property from any claim or lien, but does not release or satisfy a recent contract had with C. N. Haskell by which I am to receive further securities from him as a part of the terms of said last-mentioned contract.

                              ᵧ Signed     "J. T. ADAMS.
"Toledo, Ohio, Jan. 12, 1901."

On January 24, 1901, Haskell and Strang executed the following writing:

                    "TOLEDO, OHIO, Jany. 24, 1901.
"To DOYLE & LEWIS:

" We hereby consent to the following payments made and to be made out of the fund now in your hands and collected in the Harmon case, and known as the Adams right of way claim, amounting to $30,829.09, as follows:

"J. T. Adams _____ $6,000.00
   F. S. Mitchell _____ 1,401.00
   W. B. Strang, Jr. _____ 1,200.00
   Dime Savings and Banking Co. _____ 10,550.00
   Euclid Ave. Trust & Savings Co. _____ 8,900.00
                         Signed        "W. B. STRANG, Jr.
                                       "C. N. HASKELL."

On the 19th day of September, 1902, Mr. Lewis paid the Merrill claim.

The circuit judge directed a verdict for defendant, and plaintiff has brought the record to this court for review. In our opinion, the trial judge did not err in holding, as a matter of law, that plaintiff had not established his cause of action.

The instrument declared upon was not an evidence of a general indebtedness on the part of Adams to Strang, but was an agreement to contribute to the payment of the Merrill claim from a special fund, in consideration of the payment of the claim by Strang out of moneys due him. No money was to be paid by Adams, nor was any action required of him. If the reorganization committee used moneys due to Strang to pay the Merrill claim, Strang was authorized to receive and retain of the moneys due to Adams the sum of $2,500. The reorganization committee did not succeed in carrying out its plan, and Strang took the matter off its hands and assumed its obligations. In the September contract with Haskell, Strang expressly renounced an intention to pay the Merrill claim, and provided for its payment by Haskell. In the December contract, Strang provided that he should be fully protected on account of the Merrill claim, and that Adams should be paid what was due him, if anything. On January 12, 1901, they settled with Adams and took his receipt in full. At the time of the settlement with Adams, no part of the Merrill claim had been paid, and plaintiff, by his own act, put it out of his power to retain any sum due Adams upon a subsequent payment by him of the Merrill claim. Whatever claim plaintiff may have had against defendant Adams prior to the time of the settlement, he lost thereby.

Judgment affirmed.

GRANT, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.